# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| BRAD G. GLASS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14-CV-3059-S-DGK |
| | ) | |
| SHARON TROWBRIDGE, in her official | ) | |
| capacity as Recorder of Deeds for Howell | ) | |
| County, Missouri, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER PARTIALLY GRANTING INJUNCTIVE RELIEF

This case concerns Plaintiff Brad G. Glass ("Glass"), who wishes to marry but whose disability impacts his ability to travel. Glass alleges that Defendant Sharon Trowbridge ("Trowbridge"), the recorder of deeds for Howell County, Missouri, has violated 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131–12134, by refusing to grant him a marriage license unless he personally appears at her office.

Now before the Court are Glass's two unopposed motions: one for a preliminary injunction under Federal Rule of Civil Procedure 65(a) (Doc. 5) and one for a permanent injunction under *Bank One, Utah v. Guttau*, 190 F.3d 844 (8th Cir. 1999) (Doc. 18). Glass seeks injunctions requiring Trowbridge to suspend the personal-appearance requirement and issue a marriage license to Glass and his fiancée.

Finding that Glass has carried his burden of establishing the need for injunctive relief, the Court partially GRANTS Glass's motion for a preliminary injunction and DENIES his motion for a permanent injunction. The Court ORDERS Trowbridge to appear at Glass's home, personally or through a deputy, to witness him execute and sign a marriage license application.

## Background[1]

Two individuals seeking to marry in the state of Missouri must first obtain a marriage license from the county recorder of deeds. Mo. Rev. Stat. § 451.040(1). "Before applicants for a marriage license shall receive a license, and before the recorder of deeds shall be authorized to issue a license, the parties to the marriage shall present an application for the license, duly executed and signed in the presence of the recorder of deeds or their deputy." *Id.* § 451.040(2). The State does not recognize marriages solemnized without a license, *id.* § 451.040(1), and a recorder who violates these procedures is guilty of a misdemeanor. *Id.* § 451.120.

Trowbridge is the recorder of deeds for Howell County. Her office has a policy that goes further than § 451.010(2). Not only must applicants for a marriage license execute and sign their application in the presence of the recorder of deeds or her deputy, but they also must do so at the recorder's office in West Plains.

Glass is an unmarried man over the age of eighteen who lives in Howell County, Missouri and wishes to marry. His fiancée is an unrelated, unmarried woman over the age of eighteen. Glass suffers from panic disorder with agoraphobia as diagnosed by a licensed clinical social worker.[2] His condition practically prevents him from traveling more than a few miles from his home in Mountain View, which is approximately twenty-five miles from West Plains. This means that he cannot satisfy Trowbridge's requirement that he personally appear at her office to execute and sign his marriage license application in person, and thus cannot marry.[3]

---

[1] Except where noted, the parties have stipulated to the following facts (Doc. 18).

[2] Agoraphobia is "[a] mental disorder characterized by an irrational fear of leaving the familiar setting of home, or venturing into the open, so pervasive that a large number of external life situations are entered into reluctantly or are avoided; often associated with panic attacks." *PDR Medical Dictionary* 38 (Marjory Spraycar ed., 1995).

[3] Although Trowbridge initially intimated that she would accommodate Glass by traveling to his home to satisfy the statutory in-presence requirement (Doc. 15, at 2), the parties have since jointly stipulated that Trowbridge insists on following her office's policy requiring marriage license applicants to appear in person at her office (Doc. 21).

Glass filed a two-count complaint against Trowbridge on February 10, 2014, invoking subject-matter jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3) and seeking injunctive and monetary relief. Glass moved for a preliminary injunction four days later (Doc. 5). The parties have since stipulated that the motion "should be considered on the merits as a Motion for Permanent Injunction because there is no factual dispute between the parties and, as a result, no discovery or trial is required" (Doc. 18).

## Discussion

Glass seeks an injunction requiring Trowbridge to accept a sworn and notarized affidavit from individuals with disabilities in lieu of personally appearing at her office. The Court first considers whether it should issue that injunction in preliminary form.

Before a district court may grant a preliminary injunction to enjoin the implementation of a state statute under Rule 65(a), the movant must establish that he is likely to succeed on the merits. *See Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 731–33 (8th Cir. 2008) (en banc). Glass bears the burden of making these showings. *See id.* at 732. If Glass succeeds, then the Court must balance the equities to determine if it should grant an injunction.

### I. Glass is likely to succeed on the merits of at least his § 1983 claim.

Because Glass seeks to enjoin Trowbridge from enforcing a state statute against him, the Court must first determine whether Glass prevails on the merits of his claim. Glass brings two claims arising out of the same course of conduct. He charges that Trowbridge's enforcement of § 451.040(2) against him violates both 42 U.S.C. § 1983 (Count I) and the ADA (Count II). For the reasons below, Glass establishes success on the merits of his § 1983 claim, so the Court does not need to consider the viability of his ADA claim.

### A. Glass has established a likely violation of 42 U.S.C. § 1983.

Glass's first claim is that Trowbridge's personal-appearance policy violates 42 U.S.C. § 1983.[4] 42 U.S.C. § 1983 imposes liability on a person that deprives an individual of his federally guaranteed rights under color of state law. *Rehberg v. Paulk*, 132 S. Ct. 1497, 1501–02 (2012). To establish a violation of § 1983, a plaintiff must prove: "(1) the violation of a constitutional right, (2) committed by a state actor, (3) acting with the requisite culpability and causation to violate the constitutional right." *Cox v. Sugg*, 484 F.3d 1062, 1066 (8th Cir. 2007). The Court will examine each element in turn.

#### 1. Trowbridge likely violated Glass's constitutional rights.

First, Glass must show that Trowbridge's policy violates a constitutional right. The Due Process Clause of the Fourteenth Amendment protects the right to marry. *Zablocki v. Redhail*, 434 U.S. 374, 383–87 (1978); *M.L.B. v. S.L.J.*, 519 U.S. 102, 116 (1996) ("Choices about marriage, family life, and the upbringing of children are among associational rights this Court has ranked of basic importance to our society, rights sheltered by the Fourteenth Amendment against the State's unwarranted usurpation, disregard, or disrespect." (internal citations and quotation marks omitted)). If a government policy "significantly interferes" with an individual's exercise of this right, then it will be upheld only if "it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests." *Zablocki*, 434 U.S. at 388.

Glass has been engaged to his fiancée for over a year and would have married already if he did not have to travel to the recorder's office. Section 451.040(2) requires the applicant to appear in the presence of the recorder or her deputy, but expresses no preference as to where that

---

[4] A government entity may violate a constitutional right under § 1983 not just by enforcing codified law, but also through "persistent and widespread discriminatory practices . . . so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970). Because the parties do not dispute that Trowbridge's policy qualifies as state conduct actionable under § 1983, the Court assumes that it does.

appearance must take place. However, Trowbridge's policy is to require applicants to appear personally at her office in West Plains. Trowbridge's policy essentially puts to Glass the Hobson's choice of traveling many miles to her office, which he cannot do, or not being allowed to marry. Thus, Trowbridge's policy significantly interferes with Glass's right to marry. *See Zablocki*, 434 U.S. at 387 & n.12 (finding "significant interference" where a state statute wholly prevented an indigent applicant from marrying because he was behind on his child support payments).

Trowbridge's policy may be upheld then only if it advances a sufficiently important state interest. The probable reason behind her policy is saving county resources. Howell County is about 927.74 square miles in size,[5] and visiting marriage license applicants all over the county would cost Trowbridge time and money. Trowbridge eliminates these costs by requiring prospective marriage license applicants to appear at the recorder's office. But because Trowbridge does not advance this argument and the Court cannot ascertain how much money this policy saves Trowbridge's office, the Court finds that no "sufficiently important" state interest underlies Trowbridge's policy.

Even if such an interest was real and sufficiently important, Trowbridge's policy is not closely tailored to effectuate it. Trowbridge could issue marriage license applications in a much less overinclusive way and still conserve department resources by requiring Glass to fully or partially reimburse the recorder's office for home visits. Alternatively, she could accept a sworn and notarized affidavit from a medical professional that Glass has a disability preventing him from leaving the house and then dispatch a deputy to visit his home, if Trowbridge determines that this accommodation had minimal financial impact. Trowbridge's policy is not closely

---

[5] *2013 U.S. Gazetteer Files*, U.S. Census Bureau, http://www2.census.gov/geo/gazetteer/2013_Gazetteer/2013_gaz_counties_29.txt (last visited May 9, 2014).

tailored to a sufficiently important state interest and so cannot excuse the significant interference it poses on Glass's fundamental right to marry.

The Court finds that Glass is likely to show that Trowbridge's personal-appearance policy is unconstitutional as applied to him.[6]

### 2. Trowbridge likely is a state actor.

The second element of a § 1983 claim is that the person depriving the constitutional right is a state actor. There is no serious dispute that Trowbridge, the recorder of deeds, is a state actor. Glass sued Trowbridge in her official capacity as the recorder of deeds, an office which the State of Missouri requires each county to have. *See* Mo. Rev. Stat. § 59.010. Therefore, Glass is likely to prove this element.

### 3. Trowbridge likely is culpable of and caused the deprivation of Glass's constitutional right.

The third and final element of Glass's § 1983 claim is that Trowbridge acted with the requisite culpability and causation to violate the constitutional right. Section 451.040(2) vests the power to issue marriage licenses solely in the recorder of deeds. Trowbridge refuses to accommodate Glass's disability and she does not claim that another entity is responsible for her refusal to accommodate his disability. Because Trowbridge's office prevents Glass from marrying, the Court finds that Glass succeeds on this prong.

Glass has thus demonstrated that Trowbridge is likely liable on Count I for violating 42 U.S.C. § 1983.

---

[6] Glass argues that the government action to be enjoined here is enforcement of § 451.040(2), not Trowbridge's policy. However, Glass fails to show that the in-presence requirement of § 451.040(2) by itself significantly interferes with his right to marry. Glass's proposed injunction would still require a third party—in this case a notary public—to meet Glass at home and notarize his marriage license application. On the contrary, the Court finds that a home visit by the recorder in conformity with § 451.040(2) is a minimal infringement on the right to marry.

### B. The Court need not address whether Glass succeeds on his ADA claim.

Because Glass's ADA claim arises out of the same conduct that violates § 1983, any injunction to stop a violation of Count I would address a violation of Count II. The Court does not need to reach the question of whether Glass can prevail on his ADA claim.

## II. The *Dataphase* factors favor granting the injunction.

Because Glass has established threshold eligibility for a preliminary injunction, the Court must now balance the so-called *Dataphase* factors to determine whether a preliminary injunction should issue. Specifically, the Court considers: (1) the threat of irreparable harm to the movant; (2) the balance between this harm and any injury that granting the injunction will inflict on the non-moving party; and (3) the public interest. *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc). All *Dataphase* factors must be "balanced to determine whether they tilt toward or away" from granting the injunction. *W. Publ'g Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986). An injunction is an extraordinary remedy and the movant bears the burden of establishing the need for such relief. *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006).

At the outset, the Court must clarify the scope of the injunction it can craft through *Dataphase* balancing. The parties' jointly submitted injunction would apply to all "individuals who are unable because of a disability to appear in the presence of the recorder of deeds or their deputy" in Howell County (Proposed J. & Order, at 17). Any injunction the Court issues will pertain to Glass alone for two reasons. First, the parties' briefing and proposed order address § 1983 and the ADA as they apply only to Glass, and do not discuss whether Trowbridge's policy is invalid for *all* individuals with disabilities. Second, whether Trowbridge is liable to any given person with a disability under § 1983 or the ADA is a fact-sensitive inquiry that will

always depend on the particular individual.[7] Therefore, the Court denies Glass's motions as they pertain to parties not before it and decides only whether to issue an injunction to benefit Glass.

### A. The deprivation of a constitutional freedom sufficiently threatens irreparable harm to Glass.

The first *Dataphase* factor is the threat of irreparable harm to the movant. The loss of a constitutional freedom, "for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Rights associated with marriage are constitutional freedoms. *Zablocki*, 434 U.S. 374. Without an injunction, Glass will continue to be unable to enter into marriage and thus be deprived of this freedom. Therefore, irreparable harm is threatened if the Court denies a preliminary injunction and sustains Trowbridge's deprivation of Glass's constitutional right to marriage. *See Amos*, 2014 WL 572316, at *3 (finding irreparable harm where § 451.010 was applied to deny prisoners the right to marry). This factor favors issuance of an injunction.

### B. Glass's injunction poses great harm to Trowbridge.

The second consideration under *Dataphase* is the balance between the irreparable harm to Glass and any injury that granting the injunction will inflict on Trowbridge. Granting an injunction allowing Glass to submit a sworn and notarized affidavit that he meets the requirements for marriage will, of course, enable Glass to marry.

As the parties note, Trowbridge commits a criminal misdemeanor if she issues a marriage license without having followed the procedures required by § 451.040(2). *See* Mo. Rev. Stat. § 451.120. Exposing Trowbridge to criminal prosecution is no negligible harm, and the

---

[7] Likely not every case will feature parties that stipulate that an individual has a disability that clearly precludes travel to the recorder's office. In contrast, the three recent federal district court decisions holding § 451.040(2) invalid as to non-parties concerned prisoners. *See Amos*, 2014 WL 572316; *Nichols v. Moyers*, No. 4:13CV735 CDP, 2013 WL 2418218 (E.D. Mo. June 3, 2013); *Fuller*, 936 F. Supp. 2d 1096. A person's incarcerated status is easily determined and proved, unlike a disability, which may require expert testimony and a credibility determination to demonstrate.

8

injunction Glass seeks does nothing to protect her from such prosecution. Instead, it would place Trowbridge in a Catch-22: she would have to violate this federal court's order by continuing to enforce the in-presence requirement in accordance with state law, or else violate Missouri's criminal law by dispensing with the in-presence requirement in accordance with the federal court injunction. And the Court cannot enjoin the State of Missouri from prosecuting Trowbridge, because the State is not a party to this action. *See* Fed. R. Civ. P. 65(d)(2). This factor does not clearly favor either party, each of whom faces great injury.

A more sensible injunction would prevent Trowbridge from enforcing against Glass her office's policy of requiring marriage license applicants to appear in her office, and require her or a deputy to travel to Glass's home to accept his marriage license in accordance with § 451.040(2). This injunction would alleviate the irreparable harm to Glass while protecting Trowbridge from criminal liability. The second *Dataphase* factor favors granting this alternative injunction.

### C. A preliminary injunction would serve the public interest by promoting marriage and giving persons with disabilities equal access to public services.

Finally, the Court must balance whether an injunction would serve the public interest. Vindicating constitutional rights and facilitating marriage are in the public interest. *See Maynard v. Hill*, 125 U.S. 190, 211 (1888) ("[M]arriage . . . is an institution, in the maintenance of which in its purity the public is deeply interested, for it is the foundation of the family and of society, without which there would be neither civilization nor progress."). Allowing persons with disabilities equal access to public services serves the public interest. *See* 42 U.S.C. § 12101(b) (stating that Congress enacted the ADA to eliminate discrimination against individuals with disabilities). An injunction here would serve all of those goals.

On the other hand, the proposed injunction would require Trowbridge to commit a misdemeanor. The commission of a crime is, quite obviously, not in the public interest. Much less significantly, Glass's affidavit-based injunction might foster an increased risk of fraud. On the whole, the Court finds that this *Dataphase* factor opposes Glass's proposed injunction.

If the Court instead requires Trowbridge or a deputy to travel to Glass's home, there would no longer be public interest concerns about criminal activity or marriage fraud. The Court finds the public-interest *Dataphase* factor favors the issuance of an injunction requiring a home visit to Glass.

For the above reasons, the Court finds that the *Dataphase* factors all tilt away from Glass's proposed injunction and toward the Court's alternative. The Court therefore rejects the parties' joint proposed injunction that would require Trowbridge to accept a sworn and notarized affidavit in lieu of following the statutory requirements of § 451.040(2).

### III. The Court directs Trowbridge to travel in person, or send someone she deputizes, to Glass's home to witness Glass execute and sign a marriage license application.

The Court directs Trowbridge to personally travel to Glass's home, or to send a deputy there, so that Glass may execute and sign a marriage license application in Trowbridge's or the deputy's presence. Because there are still issues remaining to decide in this case—for example, the amount of compensatory damages due to Glass—the injunction issued will be only preliminary. At the conclusion of this case, the Court will consider the appropriateness of converting the preliminary injunction into a permanent injunction.

Glass suggests that an injunction of this nature is undesirable because his clinical social worker stated that receiving the recorder or a deputy at Glass's home would "likely [] cause Mr. Glass severe anxiety" (Doc. 6-2, at 3). However, she noted that "it is my opinion that Mr. Glass

*could* complete a marriage license with modifications to the existing practices," including a home visit (*Id.*) (emphasis added).  Further, Glass does not explain how a visit from a notary public would be any better for him than a visit from the recorder of deeds.  The Court is convinced that directing Trowbridge to effect a home visit is an acceptable form of relief.

Finally, the Court notes that although the parties seem to be in agreement that they would rather not have to contend with the in-presence requirement of § 451.040(2), the Court cannot simply override a duly enacted state law for the parties' convenience when that law can be followed in a manner wholly consistent with federal constitutional and statutory law.  When devising an equitable remedy that will override state law, a federal court must exercise its remedial powers "no farther than required by the nature and the extent of that violation."  *St. Charles Tower, Inc. v. Kurtz*, 643 F.3d 264, 271 (8th Cir. 2011) (quoting *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 399 (1982)).  Rather, such remedies "must be narrowly tailored so as to infringe state sovereignty as minimally as possible."  *Id.* (quoting *Perkins v. City of Chi. Heights*, 47 F.3d 212, 217 (7th Cir. 1995)).

The Court's preliminary injunction will abrogate Trowbridge's policy but leave intact § 451.040(2).  Although Glass's notarized-affidavit injunction would surely be more convenient for him, the Court's injunction will adequately redress Trowbridge's constitutional violation without upending a duly enacted state law.  Accordingly, the Court declines to give Glass the extraordinary remedy he requests.

## Conclusion

The Court finds that Glass has carried his burden of establishing that a preliminary injunction is warranted in this case.  Thus, the Court partially GRANTS Glass's motion for a

preliminary injunction (Doc. 5) and DENIES without prejudice Glass's motion for a permanent injunction (Doc. 18).

It is ORDERED that Defendant Sharon Trowbridge, her successors in office, and their officers, agent, servants, and employees, are hereby preliminarily enjoined for thirty days from the date of this order from requiring Plaintiff Brad G. Glass to execute or sign a marriage license application at the office of the Howell County recorder of deeds.

It is further ORDERED that Trowbridge shall, within thirty days of the date of this order, personally or through a deputy travel to the residence of Glass in Mountain View, Missouri at a mutually convenient time to allow him to execute and sign a marriage license application in her presence as required by Mo. Rev. Stat. § 451.040(2). In any event, Trowbridge, her successors in office, and their officers, agent, servants, employees, and deputies, shall not issue Glass a marriage license unless he has followed all requirements for the issuance of a marriage license under the laws of the State of Missouri. This order shall not relieve Glass of any other requirements of Missouri law.

**IT IS SO ORDERED.**

Date:  May 12, 2014  	 /s/ Greg Kays  
GREG KAYS, CHIEF JUDGE  
UNITED STATES DISTRICT COURT